IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES ALLEN (#R-55857),          )
                                   )
       Plaintiff,                  )
                                   )    Case No. 14 C 9398
   v.                              )
                                   )    Judge Manish S. Shah
                                   )
TRACEY ENGELSON, et al.,           )
                                   )
       Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles Allen, a former state prisoner, brought this 42 U.S.C. § 1983 action claiming unconstitutional conditions of confinement at Stateville's Northern Reception Center. Defendants, Superintendent Tracey Engelson and Correctional Sergeant Dennis Phillips, move for summary judgment. For the reasons that follow, defendants' motion is granted.

**I.     Background**

   **A.    Local Rule 56.1**

Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. L.R. 56.1(a)); *see also* Fed. R. Civ. P. 56(c). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran, Exp.,*

*Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)).

Defendants move to strike Plaintiff's entire response to their 56.1 Statement on the grounds that plaintiff's response is improper because (in some places) it: (1) consists of legal arguments and conclusions; (2) improperly adds new facts that are unrelated to refuting defendants' statement of facts; and (3) lacks citations to the record. The motion to strike is denied because striking the response in its entirety is unnecessary and would be an overly broad sanction in light of plaintiff's partial compliance with the local rule. Defendants' arguments as to specific responses, and for which they include an explanation and supporting argument, have been considered. *See also Bentz v. Hardy*, 638 Fed.Appx. 535, 536 (7th Cir. 2016) (finding that, even where plaintiff failed to respond properly to statement of uncontested facts, "[t]hat misstep was not fatal" because defendants chiefly relied upon plaintiff's discovery deposition as their evidentiary source, rendering his account of prison conditions undisputed).

The facts, therefore, are taken from Defendants' N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF") and facts included in Plaintiff's response and supporting affidavits, where he and/or the affiants are competent to testify as to those facts or they are supported by record evidence. *See Koszola v. Bd. of Educ. of*

2

*City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). The court gives deference to plaintiff's version of the facts where they are properly presented and supported by admissible evidence. Where defendants' statements are properly supported and are not disputed by admissible evidence or through a proper Local Rule 56.1 response, the statements are deemed undisputed. *See* Local Rule 56.1(b)(3)(C).

**B.  Facts**

Plaintiff arrived at NRC from Cook County Jail on July 29, 2014, and for the next six days, until August 4, 2014, was incarcerated in a bullpen. Dkt. 51, Defs' SOF and Dkt. 68, P's Resp. at ¶¶ 6, 8. Plaintiff was then transferred to a cell. *Id.* ¶ 8. Plaintiff's claims in this lawsuit are limited to the six-day period of his incarceration in the NRC bullpen. *Id.* During that time period, defendant Engelson was Superintendent of NRC and defendant Phillips was a Correctional Sergeant. *Id.* ¶ 3.

Plaintiff identified three adverse living conditions in the NRC bullpen: (1) being forced to sleep on the floor; (2) being exposed to mice that climbed across him; and (3) being exposed to birds that defecated on his sheet. Dkt. 68, P's Resp. at ¶ 9.[1]

　　*1.  Sleeping arrangements*

Although plaintiff alleged in his complaint that he "slept on the floor," he testified at his deposition, and does not dispute, that he slept on a mattress during

---

[1] Plaintiff also complains that he was housed in the crowded bullpen with serious criminals who are serving extremely lengthy sentences and "lost all hope and respect" for other inmates, when he, in contrast, was to serve only a short sentence. Under 28 U.S.C. § 1915A, the court dismissed this portion of plaintiff's lawsuit because it failed to state a claim where plaintiff had not alleged that he was threatened or injured by any inmate, and did not allege that any defendant was deliberately indifferent to a known risk of harm to plaintiff.

3

each night of his incarceration in the NRC bullpen. Dkt. 51, Defs' SOF and Dkt. 68, P's Resp. at ¶ 11. On some of those nights the mattress was in a plastic structure, which plaintiff referred to as a "little boat thing," and on some nights the mattress did not fit in the structure, so was placed directly on the floor. *Id*. Plaintiff was also issued two sheets and a blanket. *Id*. ¶ 19.

### 2. *Mice and birds*

Plaintiff testified and does not dispute that he saw a mouse "four or five times" during his bullpen incarceration. *Id*. ¶ 13. On one occasion, a mouse ran across plaintiff's sheet. *Id*. ¶ 14. Plaintiff lost sleep, and stayed awake, because he feared mice crawling on him. Dkt. 51, Defs' SOF and Dkt. 68, P's Resp. at ¶ 14. He was never bitten. *Id*.

Plaintiff testified that there were a lot of birds in the NRC bullpen, and that the birds nested there. Dkt. 51, Defs' SOF and Dkt. 68, P's Resp. at ¶¶ 16, 17. They flew around and their droppings fell below. *Id*. at ¶¶ 17–18. Corey Lee, who was incarcerated at Stateville NRC from February 2013 to 2015, testified that birds flew overhead and defecated on prisoners in the bullpen. Dkt. 68, P's Resp. at Ex. 1.[2] Plaintiff testified that he specifically saw "maybe" between five and ten birds, but it was "probably more." *Id*. Bird droppings landed on his sheet on one occasion; he did not use that sheet again. *Id*. ¶ 18. Plaintiff testified that he was harmed by the

---

[2] Plaintiff also submitted an affidavit of a second prisoner, Robert Barnes, who described similar and additional conditions at NRC during his incarceration in 2007, 2009, and 2011.

presence of the birds because he had to watch where he ate and sat and because he worried about the disease they might carry. *Id.* ¶ 20.

### 3. Complaints to defendants regarding conditions

Plaintiff complained about the conditions to both defendants, and showed them his soiled sheet and asked for a new one, either the day after he arrived at NRC or the day after. Dkt. 51, Defs' SOF and Dkt. 68, P's Resp. at ¶¶ 21–23. He testified that defendants cursed at him, ignored his complaints, and declined to provide him with another sheet. *Id.* Plaintiff did not make any additional complaints to defendants or have any additional conversations with them about the conditions in the NRC bullpen. *Id.*

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The facts and reasonable inferences are construed in favor of the nonmoving party. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 664 (7th Cir. 2012). A claim of constitutionally inadequate confinement requires a two-step analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted).

Courts assessing the objective severity of prison conditions must consider their nature, duration, and the harm caused to the plaintiff, in conjunction. *See Thomas v. Illinois,* 697 F.3d 612, 614–15 (7th Cir. 2012). Life's necessities include adequate shelter and sanitation, *Thomas,* 697 F.3d at 614; *Vinning–El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007), but the Eighth Amendment is implicated only if the conditions create a serious risk to an inmate's health or safety. *See Farmer*, 511 U.S. at 835. Duration of exposure is a key factor to consider; a short-term problem may not violate the constitution, but long-term exposure can violate the Eighth Amendment. *See Gray v. Hardy,* — F.3d —, 2016 WL 3457647, *2 (7th Cir. 2016) (citing *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)). A plaintiff must establish that he suffered a cognizable harm—either that the conditions resulted in physical injury or psychological harm, or created a sufficiently high probability of harm. *Gray,* 2016 WL 3457647 at *4; *Thomas,* 697 F.3d at 615. Even where individual conditions of

6

confinement are, alone, insufficiently serious, combined conditions "may violate the Constitution . . . when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson v. Setter*, 501 U.S. 294, 304 (1991)).

### A. Denial of an Elevated Bed

Plaintiff alleged in his complaint that he was forced to sleep on the floor. The undisputed evidence of record establishes that plaintiff was in fact sleeping on a mattress all six days of his confinement. Sleeping on a mattress on the floor, particularly for short periods of time, is not unconstitutional. *See Stephens v. Cottey*, 145 Fed. App'x 179, 181 (7th Cir. 2005) (noting that "short-term deprivation is less serious for Eighth Amendment purposes than a long-term one" and holding that sleeping three days on bedframe without mattress and five days on mattress without bedframe was not constitutional violation); *Johnson v. Pelker*, 891 F.2d 136, 138–39 (7th Cir. 1989). Thus, the fact that plaintiff's mattress was not elevated is considered only to the extent that there is evidence that this contributed to his exposure to unsanitary conditions (the mice and birds). *See Gray*, 2016 WL 3457647 at *3.

### B. Exposure to Pests

A prolonged pest infestation may be considered a deprivation sufficient to constitute a due process violation. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular

7

psychological sensitivities the prisoner was known to have . . ., and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas,* 697 F.3d at 614.

Plaintiff's six days of exposure to mice and birds does not rise to the level of an objectively serious and protracted infestation claim. His incarceration in the NRC bullpen was brief, and the sight of four to five mice and more than ten birds, with one contact with each of the pests (a mouse once crossed his mattress, and bird droppings once landed on his top sheet), is not extensive exposure to a serious risk of harm. A brief and limited exposure like that described by plaintiff, unpleasant though it may have been, does not rise to an "extreme" deprivation that offends the constitution. *See Sain*, 512 F.3d at 894 (allegations that an inmate "saw 'several' cockroaches crawling in his cell" over a six-year period and was twice bitten did not describe a sufficiently serious condition); *Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015).

Constitutional violations based on similar complaints involve markedly more protracted and sever pest infestations. *See White v. Monohan*, 326 F. App'x 385, 388 (7th Cir. 2009) (describing as a "close call" whether plaintiff's five-year exposure to roaches, mice, bees, and wasps that stung and bit detainee leaving scars on his legs, arms, and back, stated a claim of unconstitutional condition of confinement); *Antonelli v. Sheehan,* 81 F.3d 1422, 1431 (7th Cir. 1996) (allegation that roaches and mice were rampant and crawling on inmate's body for 16 months, and that inmate

8

had suffered significant physical injury, stated a claim for unconstitutional conditions of confinement). In *Gray*, the viable infestation claim turned on evidence that additional unsanitary conditions exacerbated the plaintiff's situation, whereas here plaintiff has presented no evidence of exacerbation. *See Gray*, 2016 WL 3457647 at * 3–4. Plaintiff slept on a mattress on the floor, but there is no evidence that this sleeping arrangement contributed to, or increased, the exposure to pests, nor is there a reasonable inference to be drawn that it did. Even if plaintiff were more likely to be exposed to mice because his mattress was not elevated, the undisputed evidence here is that a mouse only once came in contact with Plaintiff's bedding.

Plaintiff also cannot meet his additional burden to demonstrate a cognizable harm. *See Gray*, 2016 WL 3457647 at *4 ("[Plaintiff] must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment."). Plaintiff claims no physical harm or mental distress, but rather relies on purely probabilistic injury—that he feared that he *could* have had additional encounters with the mice or *could* have contracted disease. A prisoner need not necessarily be injured physically or psychologically to demonstrate harm, but plaintiff's fears do not rise to a probabilistic harm of a constitutional magnitude when he was exposed to the risk for six days and the mice and birds were only briefly encountered. Successful claims of probabilistic harm depend in large part on prolonged and severe exposure, which has not been presented here. *See Thomas,* 697 F.3d at 615 (explaining that

9

"[a]ssuming the applicability of the 'loss of a chance' theory of damages, *heavy, protracted* infestation of a prisoner's cell with such pests might be found to be a compensable hazard") (emphasis added).

No reasonable jury could find that Plaintiff's conditions of confinement were objectively serious enough to establish a constitutional violation. Defendants' motion for summary judgment is therefore granted.

If plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff may appeal without bringing a motion to reconsider this court's judgment. However, if plaintiff wishes the court to reconsider, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time

"[a]ssuming the applicability of the 'loss of a chance' theory of damages, *heavy, protracted* infestation of a prisoner's cell with such pests might be found to be a compensable hazard") (emphasis added).

No reasonable jury could find that Plaintiff's conditions of confinement were objectively serious enough to establish a constitutional violation. Defendants' motion for summary judgment is therefore granted.

If plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff may appeal without bringing a motion to reconsider this court's judgment. However, if plaintiff wishes the court to reconsider, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time

to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## III. Conclusion

Defendants' motion to strike [71] is denied. Defendants' motion for summary judgment [48] is granted. Enter judgment in favor of defendants, and terminate civil case.

ENTER:

Date: 8/11/2016

_____
Manish S. Shah
United States District Judge